T.C. Summary Opinion 2009-86


UNITED STATES TAX COURT


MICHAEL K. BILLUPS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17470-07S.            Filed June 1, 2009.


Michael K. Billups, pro se.

<u>Abigail F. Dunnigan</u> and Michael Shelton (student), for respondent.


DEAN, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.  Unless otherwise indicated, subsequent section references

are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's 2005 Federal income tax of $12,059 and an accuracy-related penalty under section 6662(a) of $2,412.

The issues for decision are whether:  (1) The loan proceeds received from petitioner's qualified employer plan are taxable distributions under section 72(p); (2) petitioner is subject to the 10-percent additional tax under section 72(t); and (3) petitioner is liable for the accuracy-related penalty under section 6662(a)[1].

## Background

Some of the facts have been stipulated and are so found.  The stipulation of facts and the exhibits received in evidence are incorporated herein by reference.  Petitioner resided in New York when the petition was filed.

During 2005 petitioner was employed with the New York City Transit Authority (NYCTA).  He had been an NYCTA employee since 1988.

Petitioner participated in the New York City Employees' Retirement System (NYCERS), a qualified employer plan.  On April

---

[1]Adjustments to petitioner's itemized deductions and child tax credit are computational and will be resolved consistent with the Court's decision.  See secs. 24(b), 67(a).

29, 2005, petitioner replaced a prior loan with a new loan and received cash proceeds of $12,630 from NYCERS.  The replacement loan was to be amortized over 5 years and repaid in biweekly installments of $363.34.  When petitioner received the $12,630, the replaced loan had an outstanding balance of $27,012.73.  His receipt of $12,630 increased his outstanding loan balance to $39,748.06, the amount of the replacement loan.

At the time of the April 29, 2005, loan, petitioner's annual annuity account balance was $52,863.38.  On the loan application form for the replacement loan, petitioner selected the "refinance" option.[2]

NYCERS advised petitioner at the time he signed the loan application form that all or part of the outstanding loan amount might be taxable.  The application form notifies the borrower that more detailed tax information is available from NYCERS.

Petitioner had previously borrowed from NYCERS in 1993, 1995 through 2001, and 2003 through 2005, as follows:

---

[2]In 2005 petitioner had not reached the age of 59-1/2.

| Year | Loan Amount | Prior Principal Amount | Repayment Term |
|------|-------------|------------------------|----------------|
| 1993 | $5,110 | -0- | 10 years |
| 1995 | 6,140 | $3,147.01 | 10 years |
| 1996 | 5,000 | 7,694.26 | 3.77 years |
| 1997 | 7,370 | 9,383.36 | 3.69 years |
| 1998 | 7,180 | 12,754.46 | 5 years |
| 1999 | 7,240 | 16,359.31 | 5 years |
| 2000 | 7,870 | 19,482,80 | 5 years |
| 2001 | 7,520 | 22,439.39 | 5 years |
| 2003 | 9,000 | 22,521.97 | 5 years |
| 2004 | 9,000 | 26,140.11 | 4 years |
| 2005 | 12,630 | 27,012.73 | 5 years |

Petitioner's loans were not in default as of 2005.

Petitioner and his wife purchased a home on June 25, 2004. On October 11, 2005, petitioner refinanced the mortgage on his home. Petitioner did not use the loan proceeds from his retirement plan towards the purchase of his home or the refinancing of his mortgage.

Petitioner received a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit Sharing Plans, IRAs, Insurance Contracts, etc., for 2005, reporting a gross distribution of $29,467.00. On the bottom of petitioner's Form 1099-R was the word "LOAN" and a distribution code "L1".

Petitioner's 2005 Form 1040, U.S. Individual Income Tax Return, was prepared by Allen S. Lokensky Associates. On the advice of his accountant, petitioner reported a pension and annuities distribution of $29,467 on his 2005 Form 1040 but designated it as a "rollover". No computation of the 10-percent

additional tax on early distributions was reported on petitioner's return.

## Discussion

### I. Burden of Proof

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden to prove that the determinations are in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). But the burden of proof on factual issues that affect the taxpayer's tax liability may be shifted to the Commissioner where the "taxpayer introduces credible evidence with respect to * * * such issue." See sec. 7491(a)(1). Petitioner has not alleged that section 7491(a) applies. However, the Court need not decide whether the burden shifted to respondent since there is no dispute as to any factual issue. Accordingly, the case is decided by the application of law to the undisputed facts, and section 7491(a) is inapplicable.

### II. NYCER Loans

Generally, loans from qualified employer plans are treated as distributions from the plan. Sec. 72(p)(1)(A). Section 402(a) provides that distributions from a qualified employer plan are taxable to the distributee in the distributee's taxable year in which the distribution occurs, pursuant to section 72. Prince v. Commissioner, T.C. Memo. 1997-324. Section 72(p)(2)(A), however, provides an exception: a loan will not give rise to a

deemed distribution to the extent that the loan (when added to the outstanding balance of all other loans from the plan) does not exceed the lesser of: (1) $50,000 (reduced by the excess, if any, of the highest outstanding balance of loans from the plan during the 1-year period ending on the day before the date on which the loan was made, over the outstanding balance of loans from the plan on the date on which the loan was made); or (2) the greater of one-half of the present value of the participant's "nonforfeitable accrued benefit" under the plan or $10,000. But the exception provided in section 72(p)(2)(A) does not apply unless: (1) The loan, by its terms, is required to be repaid within 5 years, sec. 72(p)(2)(B); and (2) "substantially level amortization of such loan (with payments not less frequently than quarterly) is required over the term of the loan", sec. 72(p)(2)(C); see Prince v. Commissioner, supra; see also sec. 72(p)(2)(B)(ii) (providing an exception to the 5-year repayment requirement for loan proceeds used to "acquire any dwelling unit * * * within a reasonable time * * * as the principal residence of the participant").[3]

For petitioner to avoid having his loan proceeds treated as a taxable distribution, petitioner's $39,642.73 loan (when added

---

[3]At trial petitioner admitted that he did not use the loan proceeds from his retirement plan to purchase his home or refinance the mortgage on his home. Therefore, the exception in sec. 72(p)(2)(B)(ii) does not apply.

to the outstanding balance of all other loans from the plan, $27,012.23) could not exceed the lesser of $50,000 (reduced by the excess, if any, of the highest outstanding balance of loans from the plan during the 1-year period ending on the day before the date on which the loan was made, over the outstanding balance of loans from the plan on the date on which the loan was made) or the greater of $26,431.69 or $10,000. Sec. 72(p)(2)(A); see also sec. 1.72(p)-1, Q&A-20(b), Income Tax Regs.[4]

The evidence in the record does not permit the Court to determine the highest outstanding balance of loans during the 1-year period ending the day before the date that the $39,642.73 loan was made. It is necessary to know that amount to determine the excess, if any, of the highest outstanding balance of loans from the plan during the 1-year period ending on the day before the date on which the loan was made, over the outstanding balance of loans from the plan on the date on which the loan was made. Neither petitioner nor respondent provided evidence on the issue. Therefore, the Court cannot determine the exact amount by which the $50,000 ceiling is reduced pursuant to section 72(p)(2)(A)(i).

---

[4]Sec. 1.72(p)-1, Q&A-20, Income Tax Regs., applies to assignments, pledges, and loans made on or after Jan. 1, 2004. Sec. 1.72(p)-1, Q&A-22(d), Income Tax Regs.

The Court, however, can determine with reasonable certainty from the evidence that the lesser of the reduced $50,000 ceiling limitation and one-half of the present value of petitioner's nonforfeitable accrued benefit is the latter. Therefore, NYCERS used the appropriate amount available to petitioner under section 72(p)(2)(A), the greater of one-half of the present value of petitioner's "nonforfeitable accrued benefit" under the plan, $26,431.69, or $10,000. NYCERS followed the correct procedure; consequently petitioner is taxable on any amount in excess of one-half of the present value of petitioner's nonforfeitable accrued benefit, $26,431.69.

The evidence shows that the sum of the new loan and the loan it replaced ($39,642.73 + $27,012.73) is $66,655.46, and it exceeds his applicable limitation of $26,431.69 by $39,748.06.[5] Petitioner failed to satisfy the requirements of the exception under section 72(p)(2)(A), and that is enough to find that he had a taxable distribution, notwithstanding that each loan provided for repayment terms of 5 years or less and substantially level amortization. See Prince v. Commissioner, supra.

---

[5]The Court notes that NYCERS deducted from the sum of the loans a $475.71 "Cost Allocation" for a "Net Loan For Tax Calc" of $66,179.75 and credited petitioner with a limitation amount of $26,435. The Court also notes that NYCERS credited petitioner with $10,277.29 for "taxes previously reported", reducing the $39,748.06 "excess" figure by that amount. NCYERS reported, therefore, a taxable amount of $29,467.46. Respondent has not challenged this figure. Petitioner has not alleged or proven any error with NYCERS's calculation of his taxable amount.

In 2005 petitioner refinanced his prior loan from NYCERS. Because he chose the refinancing option, petitioner effectively extended the prior loan's repayment terms.  As a result, both the prior loan and the refinanced loan are treated as outstanding on the date of the refinancing.  Sec. 72(p)(2)(A); sec. 1.72(p)-1 Q&A-20(a)(2), Income Tax Regs.  Therefore, the loans collectively exceed the limitation amount under section 72(p)(2)(A), and the excess results in a deemed distribution.

III.  <u>10-Percent Additional Tax for Early Withdrawal</u>

Section 72(t)(1) imposes an additional tax on an early distribution from a qualified retirement plan equal to 10 percent of the portion of the amount that is includable in gross income. The 10-percent additional tax does not apply to distributions: (1) To an employee age 59-1/2 or older; (2) to a beneficiary (or the employee's estate) on or after the employee's death; (3) on account of the employee's disability; (4) as part of a series of substantially equal periodic payments made for life; (5) to an employee after separation from service after attainment of age 55; (6) as dividends paid with respect to corporate stock described in section 404(k); (7) to an employee for medical care; or (8) to an alternate payee pursuant to a qualified domestic relations order.  Sec. 72(t)(2); see also sec. 72(t)(2)(B)-(F) (setting forth other exceptions not applicable here).

When petitioner received the loan proceeds, he had not reached the age of 59-1/2, and he has not alleged or shown that he comes within any of the other exceptions under section 72(t).[6] Therefore, respondent's determination that petitioner is liable for the 10-percent additional tax on the distribution is sustained.

## IV. Accuracy-Related Penalty

Section 7491(c) imposes on the Commissioner the burden of production in any court proceeding with respect to the liability of any individual for penalties and additions to tax. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); Trowbridge v. Commissioner, T.C. Memo. 2003-164, affd. 378 F.3d 432 (5th Cir. 2004). In order to meet the burden of production under section 7491(c), the Commissioner need only make a prima facie case that imposition of the penalty or addition to tax is appropriate. Higbee v. Commissioner, supra at 446.

Section 6662(a) and (b)(1) imposes a 20-percent penalty on the portion of an underpayment attributable to negligence or disregard of rules or regulations. Negligence includes any failure to make a reasonable attempt to comply with the

---

[6] Whether or not the sec. 72(t) 10-percent additional tax is a penalty or additional amount for which respondent would have the burden of production, under sec. 7491(c), he has met that burden by showing petitioner was not 59-1/2 when he received the distribution. See Milner v. Commissioner, T.C. Memo. 2004-111 n.2.

provisions of the Internal Revenue Code.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  But the section 6662(a) penalty does not apply to any portion of an underpayment of tax if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion.  Sec. 6664(c)(1).  The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances.  Sec. 1.6664-4(b)(1), Income Tax Regs.  The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  Id.

A taxpayer who makes full disclosure to an accountant or other qualified expert and reasonably relies on the expert's advice in good faith is not negligent.  Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968); Plotkin v. Commissioner, T.C. Memo. 2001-71; sec. 1.6664-4(b)(1), (c), Income Tax Regs.

The Court, on the basis of the testimony of petitioner's accountant, finds that petitioner was not negligent in filing his 2005 return.  Accordingly, the Court rejects respondent's determination of the accuracy-related penalty under section 6662(a).

Other arguments made by the parties and not discussed herein were considered and rejected as irrelevant, without merit, or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent with respect to the deficiency and for petitioner with respect to the accuracy-related penalty under section 6662(a)</u>.